## UNITED STATES *v.* GILMORE ET UX.

No. 21.   Argued March 27–28, 1962.—Restored to the calendar for
reargument April 2, 1962.—Reargued December 5–6, 1962.—
Decided February 18, 1963.

*Wayne G. Barnett* reargued the cause for the United
States.   With him on the briefs were *Solicitor General
Cox, Assistant Attorney General Oberdorfer, Richard J.*

*Medalie, Melva M. Graney, Harold C. Wilkenfeld* and *Arthur I. Gould.*

*Eli Freed* reargued the cause and filed briefs for respondents.

Mr. Justice Harlan delivered the opinion of the Court.

In 1955 the California Supreme Court confirmed the award to the respondent taxpayer of a decree of absolute divorce, without alimony, against his wife Dixie Gilmore.[1] 45 Cal. 2d 142, 287 P. 2d 769. The case before us involves the deductibility for federal income tax purposes of that part of the husband's legal expense incurred in such proceedings as is attributable to his successful resistance of his wife's claims to certain of his assets asserted by her to be community property under California law.[2] The claim to such deduction, which has been upheld by the Court of Claims, — Ct. Cl. —, 290 F. 2d 942, is founded on § 23 (a)(2) of the Internal Revenue Code of 1939, 26 U. S. C. (1952 ed.) § 23 (a)(2), which allows as deductions from gross income

> ". . . ordinary and necessary expenses . . . incurred during the taxable year[3] . . . for the . . . conservation . . . of property held for the production of income."

Because of a conflict of views among the Court of Claims, the Courts of Appeals, and the Tax Court regarding the

---

[1] Despite the divorce, Dixie Gilmore is referred to throughout this opinion as the "wife."

[2] Although the second Mrs. Gilmore, having been a party to one of the tax returns involved in this case, is also a respondent here, Mr. Gilmore will be referred to herein as the sole respondent.

[3] The taxable years in question are 1953 and 1954. The year 1954 is governed by the 1954 Code. Since the relevant provisions, §§ 212 and 262, are substantially identical with those of the 1939 Code, for the sake of clarity we shall refer only to the 1939 Code.

proper application of this provision,[4] and the continuing importance of the question in the administration of the federal income tax laws, we granted certiorari on the Government's petition. 368 U. S. 816. The case was first argued at the last Term and set for reargument at this one. 369 U. S. 835.

At the time of the divorce proceedings, instituted by the wife but in which the husband also cross-claimed for divorce, respondent's property consisted primarily of controlling stock interests in three corporations, each of which was a franchised General Motors automobile dealer.[5] As president and principal managing officer of the three corporations, he received salaries from them aggregating about $66,800 annually, and in recent years his total annual dividends had averaged about $83,000. His total annual income derived from the corporations was thus approximately $150,000. His income from other sources was negligible.[6]

As found by the Court of Claims, the husband's overriding concern in the divorce litigation was to protect these assets against the claims of his wife. Those claims had two aspects: *first,* that the earnings accumulated and retained by these three corporations during the Gilmores' marriage (representing an aggregate increase in corporate net worth of some $600,000) were the product of respondent's personal services, and not the result of accretion in capital values, thus rendering respondent's stockholdings in the enterprises *pro tanto* community property

---

[4] Compare *Lewis* v. *Commissioner,* 253 F. 2d 821 (C. A. 2d Cir.), and *Douglas* v. *Commissioner,* 33 T. C. 349, with *Gilmore* v. *United States,* —— Ct. Cl. ——, 290 F. 2d 942—the present case—and *Baer* v. *Commissioner,* 196 F. 2d 646 (C. A. 8th Cir.).

[5] He owned 100% of the outstanding stock of Don Gilmore-San Francisco, 73⅓% of the outstanding stock of Don Gilmore-Hayward, and 60% of the outstanding stock of Don Gilmore-Riverside.

[6] $1,024.90 in 1953, and $516.60 in 1954.

under California law;[7] *second,* that to the extent that such stockholdings were community property, the wife, allegedly the innocent party in the divorce proceeding, was entitled under California law to more than a one-half interest in such property.[8]

The respondent wished to defeat those claims for two important reasons. *First,* the loss of his controlling stock interests, particularly in the event of their transfer in substantial part to his hostile wife, might well cost him the loss of his corporate positions, his principal means of livelihood. *Second,* there was also danger that if he were found guilty of his wife's sensational and reputation-damaging charges of marital infidelity, General Motors Corporation might find it expedient to exercise its right to cancel these dealer franchises.

The end result of this bitterly fought divorce case was a complete victory for the husband. He, not the wife, was granted a divorce on his cross-claim; the wife's community property claims were denied in their entirety; and she was held entitled to no alimony. 45 Cal. 2d 142, 287 P. 2d 769.

Respondent's legal expenses in connection with this litigation amounted to $32,537.15 in 1953 and $8,074.21 in 1954—a total of $40,611.36 for the two taxable years in question. The Commissioner of Internal Revenue found all of these expenditures "personal" or "family" expenses and as such none of them deductible. 26 U. S. C. (1952

---

[7] See *Pereira* v. *Pereira,* 156 Cal. 1, 103 P. 488; *Lenninger* v. *Lenninger,* 167 Cal. 297, 139 P. 679; *Huber* v. *Huber,* 27 Cal. 2d 784, 167 P. 2d 708.

[8] Under California law a party granted a divorce on grounds of extreme cruelty or adultery may, in the court's discretion, be awarded up to all of the community property of the marriage. Cal. Civ. Code § 146. See *Barham* v. *Barham,* 33 Cal. 2d 416, 202 P. 2d 289; *Wilson* v. *Wilson,* 159 Cal. App. 2d 330, 323 P. 2d 1017. Such grounds for divorce were alleged by each of these spouses against the other.

ed.) § 24 (a)(1).[9]   In the ensuing refund suit, however, the Court of Claims held that 80% of such expense (some $32,500) was attributable to respondent's defense against his wife's community property claims respecting his stock-holdings and hence deductible under § 23 (a)(2) of the 1939 Code as an expense "incurred . . . for the . . . conservation . . . of property held for the production of income."   In so holding the Court of Claims stated:

> "Of course it is true that in every divorce case a certain amount of the legal expenses are incurred for the purpose of obtaining the divorce and a certain amount are incurred in an effort to conserve the estate and are not necessarily deductible under section 23 (a)(2), but when the facts of a particular case clearly indicate [as here] that the property, around which the controversy evolves, is held for the production of income and without this property the litigant might be denied not only the property itself but the means of earning a livelihood, then it must come under the provisions of section 23 (a)(2) . . . . The only question then is the allocation of the expenses to this phase of the proceedings."[10]   —— Ct. Cl., at ——, 290 F. 2d, at 947.

The Government does not question the amount or formula for the expense allocation made by the Court of Claims.   Its sole contention here is that the court below misconceived the test governing § 23 (a)(2) deductions, in that the deductibility of these expenses turns, so it is argued, not upon the *consequences* to respondent of a

---

[9] Section 24 (a)(1) provides: "In computing net income no deduction shall in any case be allowed in respect of—(1) Personal, living, or family expenses . . . ."

[10] Several other issues involving deficiency assessments for the years 1953, 1954, and 1955 were decided by the Court of Claims, but they are not before this Court.

·failure to defeat his wife's community property claims but upon the *origin* and *nature* of the claims themselves. So viewing Dixie Gilmore's claims, whether relating to the existence or division of community property, it is contended that the expense of resisting them must be deemed nondeductible "personal" or "family" expense under § 24 (a)(1), not deductible expense under § 23 (a)(2). For reasons given hereafter we think the Government's position is sound and that it must be sustained.

## I.

For income tax purposes Congress has seen fit to regard an individual as having two personalities: "one is [as] a seeker after profit who can deduct the expenses incurred in that search; the other is [as] a creature satisfying his needs as a human and those of his family but who cannot deduct such consumption and related expenditures." [11] The Government regards § 23 (a)(2) as embodying a category of the expenses embraced in the first of these roles.

Initially, it may be observed that the wording of § 23 (a)(2) more readily fits the Government's view of the provision than that of the Court of Claims. For in context "conservation of property" seems to refer to operations performed with respect to the property itself, such as safeguarding or upkeep, rather than to a taxpayer's retention of ownership in it.[12] But more illuminating than the mere language of § 23 (a)(2) is the history of the provision.

Prior to 1942 § 23 allowed deductions only for expenses incurred "in carrying on any trade or business," the deduction presently authorized by § 23 (a)(1). In *Higgins* v. *Commissioner*, 312 U. S. 212, this Court gave that pro-

---

[11] Surrey and Warren, Cases on Federal Income Taxation, 272 (1960).

[12] See 4 Mertens, Law of Federal Income Taxation (rev. ed. 1960), § 25A.09, at 19–20.

vision a narrow construction, holding that the activities of an individual in supervising his own securities investments did not constitute the "carrying on of a trade or business," and hence that expenses incurred in connection with such activities were not tax deductible. Similar results were reached in *United States* v. *Pyne,* 313 U. S. 127, and *City Bank Co.* v. *Helvering,* 313 U. S. 121. The Revenue Act of 1942 (56 Stat. 798, § 121), by adding what is now § 23 (a)(2), sought to remedy the inequity inherent in the disallowance of expense deductions in respect of such profit-seeking activities, the income from which was nonetheless taxable.[13]

As noted in *McDonald* v. *Commissioner,* 323 U. S. 57, 62, the purpose of the 1942 amendment was merely to enlarge "the category of incomes with reference to which expenses were deductible." And committee reports make clear that deductions under the new section were subject to the same limitations and restrictions that are applicable to those allowable under § 23 (a)(1).[14] Further, this Court has said that § 23 (a)(2) "is comparable and *in pari materia* with § 23 (a)(1)," providing for a class of deductions "coextensive with the business deductions allowed by § 23 (a)(1), except for" the requirement that the income-producing activity qualify as a trade or business. *Trust of Bingham* v. *Commissioner,* 325 U. S. 365, 373, 374.

A basic restriction upon the availability of a § 23 (a)(1) deduction is that the expense item involved must be one that has a business origin. That restriction not only

---

[13] See H. R. Rep. No. 2333, 77th Cong., 2d Sess. 46.

[14] H. R. Rep. No. 2333, 77th Cong., 2d Sess. 75: "A deduction under this section is subject, except for the requirement of being incurred in connection with a trade or business, to all the restrictions and limitations that apply in the case of the deduction under section 23 (a)(1)(A) of an expense paid or incurred in carrying on any trade or business." See also S. Rep. No. 1631, 77th Cong., 2d Sess. 88.

46

inheres in the language of § 23 (a)(1) itself, confining such deductions to "expenses . . . incurred . . . in carrying on any trade or business," but also follows from § 24 (a)(1), expressly rendering nondeductible "in any case . . . [p]ersonal, living, or family expenses." See note 9, *supra*. In light of what has already been said with respect to the advent and thrust of § 23 (a)(2), it is clear that the "[p]ersonal . . . or family expenses" restriction of § 24 (a)(1) must impose the same limitation upon the reach of § 23 (a)(2)—in other words that the only kind of expenses deductible under § 23 (a)(2) are those that relate to a "business," that is, profit-seeking, purpose. The pivotal issue in this case then becomes: was this part of respondent's litigation costs a "business" rather than a "personal" or "family" expense?

The answer to this question has already been indicated in prior cases. In *Lykes* v. *United States,* 343 U. S. 118, the Court rejected the contention that legal expenses incurred in contesting the assessment of a gift tax liability were deductible. The taxpayer argued that if he had been required to pay the original deficiency he would have been forced to liquidate his stockholdings, which were his main source of income, and that his legal expenses were therefore incurred in the "conservation" of income-producing property and hence deductible under § 23 (a)(2). The Court first noted that the "deductibility [of the expenses] turns wholly upon the nature of the activities to which they relate" (343 U. S., at 123), and then stated:

> "Legal expenses do not become deductible merely because they are paid for services which relieve a taxpayer of liability. That argument would carry us too far. It would mean that the expense of defending almost any claim would be deductible by a taxpayer on the ground that such defense was made to help him keep clear of liens whatever income-

producing property he might have. For example, it suggests that the expense of defending an action based upon personal injuries caused by a taxpayer's negligence while driving an automobile for pleasure should be deductible. Section 23 (a)(2) never has been so interpreted by us. . . .

"While the threatened deficiency assessment . . . added urgency to petitioner's resistance of it, neither its size nor its urgency determined its character. It related to the tax payable on petitioner's gifts . . . . The expense of contesting the amount of the deficiency was thus at all times attributable to the gifts, as such, and accordingly was not deductible.

"If, as suggested, the relative size of each claim, in proportion to the income-producing resources of a defendant, were to be a touchstone of the deductibility of the expense of resisting the claim, substantial uncertainty and inequity would inhere in the rule. . . . It is not a ground for . . . [deduction] that the claim, if justified, will consume income-producing property of the defendant." 343 U. S., at 125–126.

In *Kornhauser* v. *United States,* 276 U. S. 145, this Court considered the deductibility of legal expenses incurred by a taxpayer in defending against a claim by a former business partner that fees paid to the taxpayer were for services rendered during the existence of the partnership. In holding that these expenses were deductible even though the taxpayer was no longer a partner at the time of suit, the Court formulated the rule that "where a suit or action against a taxpayer is directly connected with, or . . . proximately resulted from, his business, the expense incurred is a business expense . . . ." 276 U. S., at 153. Similarly, in a case involving an expense incurred in satisfying an obligation (though not a litigation expense), it was said that "it is the origin of the

liability out of which the expense accrues" or "the kind of transaction out of which the obligation arose . . . which [is] crucial and controlling." *Deputy* v. *du Pont,* 308 U. S. 488, 494, 496.

The principle we derive from these cases is that the characterization, as "business" or "personal," of the litigation costs of resisting a claim depends on whether or not the claim *arises in connection with* the taxpayer's profit-seeking activities. It does not depend on the *consequences* that might result to a taxpayer's income-producing property from a failure to defeat the claim, for, as *Lykes* teaches, that "would carry us too far" [15] and would not be compatible with the basic lines of expense deductibility drawn by Congress.[16] Moreover, such a rule would lead to capricious results. If two taxpayers are each sued for an automobile accident while driving for pleasure, deductibility of their litigation costs would turn on the mere circumstance of the character of the assets each happened to possess, that is, whether the judgments against them stood to be satisfied out of income- or nonincome-producing property. We should be slow to attribute to Congress a purpose producing such unequal treatment among taxpayers, resting on no rational foundation.

---

[15] The Treasury Regulations have long provided: "An expense (not otherwise deductible) paid or incurred by an individual in determining or contesting a liability asserted against him does not become deductible by reason of the fact that property held by him for the production of income may be required to be used or sold for the purpose of satisfying such liability." Treas. Reg. (1954 Code) § 1.212–1 (m); see Treas. Reg. 118 (1939 Code) § 39.23 (a)–15 (k).

[16] Expenses of contesting tax liabilities are now deductible under § 212 (3) of the 1954 Code. This provision merely represents a policy judgment as to a particular class of expenditures otherwise non-deductible, like extraordinary medical expenses, and does not cast any doubt on the basic tax structure set up by Congress.

Confirmation of these conclusions is found in the incongruities that would follow from acceptance of the Court of Claims' reasoning in this case. Had this respondent taxpayer conducted his automobile-dealer business as a sole proprietorship, rather than in corporate form, and claimed a deduction under § 23 (a)(1),[17] the potential impact of his wife's claims would have been no different than in the present situation. Yet it cannot well be supposed that § 23 (a)(1) would have afforded him a deduction, since his expenditures, made in connection with a marital litigation, could hardly be deemed "expenses . . . incurred . . . in carrying on any trade or business." Thus, under the Court of Claims' view expenses may be even less deductible if the taxpayer is carrying on a trade or business instead of some other income-producing activity. But it was manifestly Congress' purpose with respect to deductibility to place all income-producing activities on an equal footing. And it would surely be a surprising result were it now to turn out that a change designed to achieve equality of treatment in fact had served only to reverse the inequality of treatment.

For these reasons, we resolve the conflict among the lower courts on the question before us (note 4, *supra*) in favor of the view that the origin and character of the claim with respect to which an expense was incurred, rather than its potential consequences upon the fortunes of the taxpayer, is the controlling basic test of whether the expense was "business" or "personal" and hence whether it is deductible or not under § 23 (a)(2). We find the reasoning underlying the cases taking the "consequences" view unpersuasive.

*Baer* v. *Commissioner,* 196 F. 2d 646, upon which the Court of Claims relied in the present case, is the leading

---

[17] We find no indication that Congress intended § 23 (a)(2) to include such expenses.

authority on that side of the question.[18]   There the Court
of Appeals for the Eighth Circuit allowed a § 23 (a)(2)
expense deduction to a taxpayer husband with respect to
attorney's fees paid in a divorce proceeding in connection
with an alimony settlement which had the effect of pre-
serving intact for the husband his controlling stock inter-
est in a corporation, his principal source of livelihood.   The
court reasoned that since the evidence showed that the tax-
payer was relatively unconcerned about the divorce itself
"[t]he controversy did not go to the question of . . . [his]
liability [for alimony] [19] but to the manner in which . . .
[that liability] might be met . . . without greatly dis-
turbing his financial structure"; therefore the legal serv-
ices were "for the purpose of conserving and maintaining"
his income-producing property.   196 F. 2d, at 649–650,
651.

It is difficult to perceive any significant difference be-
tween the "question of liability" and "the manner" of its
discharge, for in both instances the husband's purpose
is to avoid losing valuable property.   Indeed most of the
cases which have followed *Baer* have placed little reliance
on that distinction, and have tended to confine the deduc-
tion to situations where the wife's alimony claims, if
successful, might have completely destroyed the husband's

---

[18] Besides the present case see to the same effect, *e. g., Patrick* v.
*United States,* 288 F. 2d 292 (C. A. 4th Cir.), No. 22, reversed today,
*post,* p. 53; *Owens* v. *Commissioner,* 273 F. 2d 251 (C. A. 5th Cir.);
*Bowers* v. *Commissioner,* 243 F. 2d 904 (C. A. 6th Cir.); *McMurtry*
v. *United States,* 132 Ct. Cl. 418, 132 F. Supp. 114.

[19] Expenses incurred in divorce litigation have generally been held
to be nondeductible.   See, *e. g., Richardson* v. *Commissioner,* 234 F.
2d 248 (C. A. 4th Cir.); *Smith's Estate* v. *Commissioner,* 208 F. 2d
349 (C. A. 3d Cir.); *Joyce* v. *Commissioner,* 3 B. T. A. 393.   See also
Treas. Reg. (1954 Code) § 1.262–1 (b)(7): "Generally, attorney's
fees and other costs paid in connection with a divorce, separation, or
decree for support are not deductible by either the husband or the
wife."

capacity to earn a living.[20]  Such may be the situation where loss of control of a particular corporation is threatened, in contrast to instances where the impact of a wife's support claims is only upon diversified holdings of income-producing securities.[21]  But that rationale too is unsatisfactory.  For diversified security holdings are no less "property held for the production of income" than a large block of stock in a single company.  And as was pointed out in *Lykes, supra,* at 126, if the relative impact of a claim on the income-producing resources of a taxpayer were to determine deductibility, substantial "uncertainty and inequity would inhere in the rule."

We turn then to the determinative question in this case: did the wife's claims respecting respondent's stockholdings arise in connection with his profit-seeking activities?

## II.

In classifying respondent's legal expenses the court below did not distinguish between those relating to the claims of the wife with respect to the *existence* of community property and those involving the *division* of any such property.  *Supra,* pp. 41–42.  Nor is such a breakdown necessary for a disposition of the present case.  It is enough to say that in both aspects the wife's claims stemmed entirely from the marital relationship, and not, under any tenable view of things, from income-producing activity.  This is obviously so as regards the claim to more than an equal division of any community property

---

[20] See, *e. g.,* the present case, —— Ct. Cl., at ——, 290 F. 2d, at 947; *Tressler* v. *Commissioner,* 228 F. 2d 356, 361 (C. A. 9th Cir.); *Howard* v. *Commissioner,* 202 F. 2d 28, 30 (C. A. 9th Cir.).

[21] Compare, with the present case, *Davis* v. *United States,* 152 Ct. Cl. 805, 287 F. 2d 168, reversed in part on other grounds, 370 U. S. 65, in which the Court of Claims held to be nondeductible the legal expenses of resisting the wife's threat to stock not essential to protect the husband's employment.

found to exist. For any such right depended entirely on the wife's making good her charges of marital infidelity on the part of the husband. The same conclusion is no less true respecting the claim relating to the existence of community property. For no such property could have existed but for the marriage relationship.[22] Thus none of respondent's expenditures in resisting these claims can be deemed "business" expenses, and they are therefore not deductible under § 23 (a)(2).

In view of this conclusion it is unnecessary to consider the further question suggested by the Government: whether that portion of respondent's payments attributable to litigating the issue of the existence of community property was a capital expenditure or a personal expense. In neither event would these payments be deductible from gross income.

The judgment of the Court of Claims is reversed and the case is remanded to that court for further proceedings consistent with this opinion.

*It is so ordered.*

MR. JUSTICE BLACK and MR. JUSTICE DOUGLAS believe that the Court reverses this case because of an unjustifiably narrow interpretation of the 1942 amendment to § 23 of the Internal Revenue Code and would accordingly affirm the judgment of the Court of Claims.

---

[22] The respondent's attempted analogy of a marital "partnership" to the business partnership involved in the *Kornhauser* case, *supra,* is of course unavailing. The marriage relationship can hardly be deemed an income-producing activity.