**Norton CLAPP, Individually and as Executor of the Estate of Evelyn Clapp, Deceased,**

v.

**The UNITED STATES.**

**No. 463–60.**

United States Court of Claims.

July 15, 1966.

426

William E. Evenson, Seattle, Wash., attorney of record, for plaintiff.

Mitchell Samuelson, Washington, D. C., with whom was Asst. Atty. Gen. Mitchell Rogovin, for defendant.

Before COWEN, Chief Judge, and LARAMORE, DURFEE, DAVIS, and COLLINS, Judges.

OPINION

PER CURIAM:

This case was referred to Trial Commissioner Mastin G. White with directions to make findings of fact and recommendation for conclusions of law. The commissioner has done so in an opinion and report filed on March 8, 1966. Plaintiff has filed no exceptions to or brief on this report and the time for so filing pursuant to the Rules of the court has expired. On April 28, 1966, defendant filed a motion that the court adopt the findings, opinion and conclusion of law of the trial commissioner. Since the court agrees with the trial commissioner's findings, opinion and recommended conclusion of law, as hereinafter set forth, it hereby adopts the same as the basis for its judgment in this case without oral argument. Plaintiff is, therefore, not entitled to recover and the petition is dismissed.

OPINION OF COMMISSIONER*

WHITE, Commissioner:

The plaintiff sues for refunds of income taxes paid for the years 1947, 1948, 1949, and 1950. The question to be decided by the court is whether legal expenses that aggregated more than $300,-000 during the 4-year period and were reasonably incurred in connection with the defense of several related lawsuits, and a payment in the amount of $125,000 that was made in 1949 to settle the litigation just mentioned, were deductible from gross income for tax purposes.

The plaintiff contends that the question stated in the preceding paragraph merits an affirmative answer. The defendant takes a contrary position.

It is my opinion that the question previously outlined should be answered in the negative, and, accordingly, that the plaintiff is not entitled to recover.

The several lawsuits referred to in the first paragraph of this opinion were instituted in 1947 and 1948 by or on behalf of David Joyce, as the sole legatee and executor of the estate of Mary Davis Clapp Joyce, deceased. The present plaintiff had been married to Mary Davis Clapp Joyce at one time, but, prior to the institution of the lawsuits by David Joyce, the plaintiff and Mary Davis Capp Joyce had been divorced in 1940, the present plaintiff had married Evelyn Clapp, Mary Davis Clapp Joyce had married David Joyce, and Mary Davis Clapp Joyce had then died subsequent to that marriage.

The marriage of Mary Davis Clapp Joyce to David Joyce occurred early in 1945. Later in the same year, Mary

---

\* The opinion, findings of fact, and recommended conclusion of law are submitted under the order of reference and Rule 57 (a).

Davis Clapp Joyce was killed in an automobile accident on July 19, 1945. Her will left all her estate to David Joyce and named him as executor.

After the death of Mary Davis Clapp Joyce, David Joyce filed or caused to be filed in 1947 and 1948 the several lawsuits that gave rise to the legal expenses and the compromise payment with which we are concerned in the present case. One of the Joyce lawsuits was filed in the Superior Court of the State of California for Ventura County, two of the actions were filed in the Superior Court of the State of Washington for King County, and another action was filed in the United States District Court for the Western District of Washington. The present plaintiff was a defendant in each of the Joyce lawsuits.

The gist of the allegations in the Joyce lawsuits was that the 1940 divorce proceedings between the present plaintiff and Mary Davis Clapp Joyce were the result of a conspiracy between the present plaintiff and others, that a fraud was perpetrated on the court by the present plaintiff and others in connection with such proceedings, and that the present plaintiff deceived and defrauded Mary Davis Clapp Joyce in connection with an ancillary property settlement agreement dated July 10, 1940, thereby retaining for himself most of the community property of the marriage, although Mary Davis Clapp Joyce lawfully owned an undivided one-half interest in all the community property under the law of the State of the marital domicile. The total amount claimed by or on behalf of David Joyce in the several lawsuits, as the sole legatee and executor of the estate of Mary Davis Clapp Joyce, deceased, was alleged to be not less than $14,705,839.71 and perhaps as much as $26,000,000.

An effort was made in the litigation to have a constructive trust for the benefit of David Joyce judicially impressed on an undivided one-half interest in all the property which was owned by Mary Davis Clapp Joyce and the present plaintiff as of July 10, 1940, and which was still in the possession of the present plaintiff or persons claiming under him, including Evelyn Clapp, or, in the alternative, to obtain a judicial declaration that such property was owned by the present plaintiff and the estate of Mary Davis Clapp Joyce as tenants in common. Also, a money judgment was sought for the value of any of the community property of Mary Davis Clapp Joyce and the present plaintiff that had been disposed of by the present plaintiff after July 10, 1940, to bona fide purchasers who had no notice of the alleged fraud against Mary Davis Clapp Joyce.

All the Joyce litigation against the present plaintiff was eventually withdrawn and released on June 3, 1949, pursuant to a compromise agreement under which the present plaintiff paid David Joyce $125,000 in settlement of Mr. Joyce's claims.

The plaintiff reasonably expended more than $300,000 during the 4-year period, 1947–1950, in connection with the defense of the Joyce litigation.

For the calendar year 1947, the plaintiff and his wife, Evelyn Clapp, filed separate tax returns. For the calendar years 1948, 1949, and 1950, joint income tax returns were filed by the plaintiff and his wife.

The plaintiff in his income tax return for 1947, and the plaintiff and Evelyn Clapp in their joint income tax returns for 1948, 1949, and 1950, claimed as deductible expenses the amounts which the plaintiff had expended during the respective years for legal expenses in connection with the defense of the Joyce litigation. In addition, the plaintiff and Evelyn Clapp claimed a deduction for 1949 with respect to the $125,000 that was paid to David Joyce in settlement of the litigation.

The claimed deductions were disallowed by the Internal Revenue Service, which made deficiency assessments of income taxes for the several years. The deficiency assessment for 1947 was made against the plaintiff, and the deficiency assessment for 1948 was made against the plaintiff and Evelyn Clapp. Evelyn Clapp died on April 9, 1951. The defi-

ciency assessments for 1949 and 1950 were made subsequent to Evelyn Clapp's death, and, consequently, such assessments were made against the plaintiff and the estate of Evelyn Clapp, deceased. The deficiencies for the several years, together with the accrued statutory interest, were duly paid.

On June 27, 1956, the plaintiff timely filed claims for refunds of income taxes with respect to the years 1947, 1948, 1949, and 1950,[1] asserting that the legal expenses which had been incurred in defending against the Joyce litigation, and the compromise payment which had been made to settle that litigation, were properly deductible for income tax purposes. The claim for 1947 was filed by the plaintiff individually, and the claims for 1948, 1949, and 1950 were filed by the plaintiff individually and as executor of the estate of Evelyn Clapp, deceased.

All the claims mentioned in the preceding paragraph were disallowed by the Commissioner of Internal Revenue on January 16, 1959.

The present action was instituted thereafter on December 20, 1960, by the plaintiff individually and as executor of the estate of Evelyn Clapp, deceased.

The plaintiff contends that the legal expenses and the compromise payment previously mentioned were deductible from gross income for tax purposes under Section 23(a) (2) of the Internal Revenue Code of 1939, as amended (26 U.S.C. § 23(a) (2) (1946)). During the period involved in the present case, that statutory provision was phrased as follows:

§ 23. **Deductions from gross income.**

In computing net income there shall be allowed as deductions:

(a) **Expenses.**
* * * * * *
(2) **Non-trade or non-business expenses.**

In the case of an individual, all the ordinary and necessary expenses paid or incurred during the taxable year for the production or collection of income, or for the management, conservation, or maintenance of property held for the production of income.

On the other hand, it is the defendant's position that the legal expenses and the compromise payment involved in this case were non-deductible personal or family expenses within the meaning of Section 24(a) (1) of the 1939 Code, as amended (26 U.S.C. § 24(a) (1) (1946)), which provided that in computing net income, no deduction should be allowed for "Personal, living, or family expenses, except extraordinary medical expenses * * *."

The legal issue before the court in this case is similar to the one that was dealt with by the Supreme Court in United States v. Gilmore, 372 U.S. 39, 83 S.Ct. 623, 9 L.Ed.2d 570 (1963). In that case, the respondent had obtained a divorce from his wife in California; he had incurred legal expenses in successfully resisting his wife's claims to certain assets, which she asserted were community property under California law; and a controversy had subsequently arisen between the respondent and the United States as to whether such legal expenses were deductible for income tax purposes under Section 23(a) (2) of the Internal Revenue Code of 1939, as amended. The Supreme Court said (at page 46, 83 S.Ct. at page 627) that the only kind of expenses deductible under Section 23(a) (2) were those that related to a "profit-seeking" purpose; and (at page 48, 83 S.Ct. at page 628) that the test to be used in determining whether litigation costs incurred in resisting a claim were deductible under that statutory provision was whether or not the claim that was resisted arose *"in connection with* the taxpayer's profit-seeking activities." The Court went on to say (at page 48, 83 S.Ct. at page 629) that the answer to the question did not "depend on the *consequences* that might result to a taxpayer's income-producing property from a failure to de-

---

1. Agreements extending the respective limitation periods had been entered into between the plaintiff and the Commissioner of Internal Revenue.

feat the claim * * *." In applying these principles to the case before it, the Court noted (at page 51, 83 S.Ct. 623) that the wife's claims stemmed entirely from the marital relationship, and not from any income-producing activity. Accordingly, the Court held (at page 52, 83 S.Ct. 623) that none of the respondent's expenditures in resisting those claims was deductible under Section 23(a) (2) of the Internal Revenue Code of 1939, as amended.

 It seems clear that, under the test stated by the Supreme Court in the *Gilmore* case, the legal expenses which were incurred by the present plaintiff in connection with the defense of the Joyce lawsuits, and the compromise payment which was made by the plaintiff in settling the Joyce claims, were not deductible under Section 23(a) (2) of the Internal Revenue Code of 1939, as amended. The Joyce claims all arose out of the marital relationship that existed at one time between the plaintiff and Mary Davis Clapp Joyce, and were grounded on the contention that, by virtue of such marital relationship, Mary Davis Clapp Joyce lawfully owned an undivided one-half interest in property, which the present plaintiff fraudulently withheld from her at the time of their divorce. The Joyce claims did not arise "in connection with the taxpayer's profit-seeking activities," to use the language of the Supreme Court.

It is true that David Joyce sought to wrest property from the plaintiff in the lawsuits that gave rise to the legal expenses and the compromise payment with which we are concerned in the present litigation. The meager record before the court does not provide clear evidence concerning the nature and extent of the property that David Joyce sought to take from the plaintiff. However, it can probably be inferred that such property was very valuable, that much of it was income-producing, and that if the plaintiff had not resisted and ultimately settled the Joyce claims, he would have lost considerable income-producing property. Even so, according to the Supreme Court's decision in the *Gilmore* case, the avoidance of such consequences was not sufficient to bring the plaintiff's legal expenses and the compromise payment within the scope of Section 23(a) (2) of the Internal Revenue Code of 1939, as amended.

Since the Joyce claims did not arise in connection with any profit-seeking activities on the part of the plaintiff, the Supreme Court's decision in the *Gilmore* case requires a holding in the present case that the plaintiff's expenditures in resisting and settling those claims did not constitute deductible expenses under Section 23(a) (2) of the Internal Revenue Code of 1939, as amended, but, rather, were non-deductible personal or family expenses within the meaning of Section 24(a) (1) of the 1939 Code, as amended.

It necessarily follows that the plaintiff is not entitled to recover in the present action, and that the petition should be dismissed.

