**Arthur BEERMAN and Jessie Beerman, Plaintiffs-Appellees,**

v.

**UNITED STATES of America, Defendant-Appellant.**

No. 17516.

United States Court of Appeals
Sixth Circuit.

Feb. 9, 1968.

Elmer J. Kelsey, Atty., Dept. of Justice, Washington, D. C., for appellant; Mitchell Rogovin, Asst. Atty. Gen., Lee A. Jackson, Harold C. Wilkenfeld, Anthony Zell Roisman, Attys., Dept. of Justice, Washington, D. C., on brief; Robert M. Draper, U. S. Atty., Roger J. Makley, Asst. U. S. Atty., Dayton, Ohio, of counsel.

Jerome Goldman, Cincinnati, Ohio, for appellee; Goldman, Cole & Putnick, Paul Tobias, Cincinnati, Ohio, on brief.

Before PHILLIPS, CELEBREZZE, and McCREE, Circuit Judges.

McCREE, Circuit Judge.

This is an appeal by the government from a judgment of the District Court, sitting without a jury, granting taxpayer[1] a refund on the ground that his deduction of certain legal fees from his 1957 gross income, which had been disallowed by the Commissioner, was allowable under § 212(2) of the Internal Revenue Code of 1954.[2]

---

1. The term "taxpayer" will be used to refer to Arthur Beerman. His wife Jessie Beerman is included as a party because a joint return was filed.

2. 26 U.S.C. § 212(2):
   In the case of an individual, there shall be allowed as a deduction all the ordinary and necessary expenses paid or incurred during the taxable year—
        *     *     *     *     *
       (2) for the management, conservation, or maintenance of property held for the production of income; * * *.

The facts are as follows. On November 28, 1956, taxpayer entered into an agreement with the Johnston-Shelton Company, looking to the purchase of a Dayton department store by "corporations to be designated by" taxpayer. On December 3, 1956, the assets, with the exception of certain leasehold interests, were sold to Downtown Beerman Stores, Inc., a corporation organized by taxpayer and served by him as president. Taxpayer also served as president of Wright Plaza Investment Corp. and Midwest Realty Management Co., the corporations to which the leasehold interests were conveyed.

Under the November 28 agreement, taxpayer unconditionally guaranteed the purchase price of the assets sold to Downtown. As security for the purchase price, taxpayer agreed to deposit in an escrow account with the Winters National Bank and Trust Co. a note to his order by Robert Shapiro with an unpaid balance of $832,431.56, secured by a mortgage on the Dayton Arcade and Commercial Building. Taxpayer continued to collect payments of principal and interest on this note, and paid the appropriate income taxes.

Shortly after the agreement, a dispute arose among the parties. In February, 1957, Johnston-Shelton commenced a suit against Downtown and taxpayer, alleging that the defendants had failed to fulfill certain obligations under the agreement. Taxpayer, Downtown, Wright Plaza, and Midwest Realty in turn sued Johnston-Shelton on the ground that the latter corporation had misrepresented the value of its assets. Johnston-Shelton answered this complaint and filed a cross-petition against taxpayer, Downtown, Shapiro, Arcade Buildings, Inc. and the Winters bank, stating that it was entitled to ownership of the Shapiro-Beerman note and seeking to enjoin further payments of interest to taxpayer. These suits were ultimately settled, and pursuant to the settlement taxpayer paid $3139.33 to his attorneys and $12,500 to the attorneys for Johnston-Shelton. He attempted to deduct these sums from his gross income

for 1957, but the deductions were disallowed. The District Court, however, found him entitled to a refund because the expenses had been incurred for the management and conservation of income producing property—the note.

On appeal, the government observes correctly that in order for an expense to be deductible under § 212, the expense must not only have the effect of managing, conserving, or maintaining income-producing property but must also arise in a business context. In United States v. Gilmore, 372 U.S. 39, 83 S.Ct. 623, 9 L.Ed.2d 570 (1963), the Supreme Court held that a husband could not deduct the expenses incurred in defending a divorce action although he might have lost income-producing property had he been unsuccessful and stated:

> [T]he origin and character of the claim with respect to which an expense was incurred, rather than its potential consequence upon the fortunes of the taxpayer, is the controlling basic test of whether the expense was "business" or "personal" and hence whether it is deductible or not * * *. 372 U.S. at 49, 83 S.Ct. at 629.

The government proceeds to argue that the instant record is devoid of proof as to the business origin of taxpayer's expenses. We agree with taxpayer, however, that far from containing insufficient proof, the record, as hereinbefore summarized, permits no conclusion other than that the expenses had their origin in taxpayer's business activities.

Although the government virtually conceded during the course of its oral presentation that a deduction should have been allowed if the expenses had a business origin, we add that we find no merit in the government's further argument that the expenses here were not "directly related" to the management, conservation, or maintenance of income-producing property. In Cobb v. Commissioner of Internal Revenue, 173 F.2d 711 (6th Cir. 1949), the decision of this court upon which the government relies, the taxpayer sought unsuccessfully to deduct expenses incurred in litigating a gift-tax

liability on the ground that he would have had to relinquish income-producing property to pay the tax. In *Cobb*, the income-producing property was not itself a subject of the suit necessitating the payment of the legal fees, while in this case taxpayer's note was directly involved.

Affirmed.