EUGENE J. ROBB AND MARGARET H. ROBB, Petitioners v. COMMISSIONER OF INTERNAL REVENUE, Respondent
Robb v. Commissioner
Docket No. 11866-80.
United States Tax Court
T.C. Memo 1983-53; 1983 Tax Ct. Memo LEXIS 731; 45 T.C.M. (CCH) 600; T.C.M. (RIA) 83053; January 31, 1983. *731 Held, petitioners incurred a nondeductible expense for legal fees arising out of a defense against a libel action brought by a real estate agent as a result of a controversy over the purchase of a personal residence by them. Eugene J. Robb and Margaret H. Robb, pro se. James A. Nelson, for the respondent. *732 STERRETT
MEMORANDUM OPINION STERRETT, Judge: By notice of deficiency dated April 22, 1980 respondent determined a deficiency of $1,891.30 in petitioners' Federal income tax for the taxable year 1976. The sole issue for decision is whether petitioners are entitled to deduct certain legal expenses incurred by them during 1976. The facts in this case have been fully stipulated pursuant to Rule 122, Tax Court Rules of Practice and Procedure. The stipulation of facts together with the exhibits attached thereto are incorporated herein by this reference. Petitioners, Eugene J. Robb and Margaret H. Robb, resided in Sequim, Washington at the time of filing their petition in this case. They filed a joint Federal income tax return for the calendar year 1976 with the Internal Revenue Service Center, Ogden, Utah. In November of 1973, petitioners became interested in the purchase of realty in a subdivision called Prescott Country Club located in Yavapai County, Arizona. Accordingly, they contacted Douglas B. McIntyre, who was a real estate broker doing business under the firm name of Country Club Realty. McIntyre represented himself as being the resale agent for residential *733 lots at Prescott Country Club and showed petitioners a number of lots in that area. McIntyre also introduced petitioners to John Quick and Bill Spur, both of whom were involved in the building of homes at Prescott Country Club through a corporation entitled United Western Builders, Inc. McIntyre had no proprietary interest in United Western Builders, Inc. Thereafter, petitioners decided to purchase a home at Prescott Country Club from United Western. The contract was entered into on May 22, 1974 and provided for petitioners' purchase of an "almost completed home" for a price of $45,000. The sale was negotiated between petitioners and Quick, who was the broker of record for Country Club Realty. Quick allegedly represented that he would personally defend against any liens placed on the house subsequent to petitioners obtaining title and he would, if necessary, pay them. Although petitioners purchased this house as their primary residence, title to the house was taken in the name of Robb Properties. Robb Properties is a trust which was created by petitioners in June 1973. At that time petitioners transferred all of their assets to this trust. The stated purpose of the trust *734 was to maintain, conserve and expand petitioners' assets. After close of escrow, two mechanics and materialman's liens were filed against the property. The lien claimants attempted to foreclose on their liens and petitioners, in order to avoid losing their residence at a sheriff's sale, were forced to pay approximately $5,000 in satisfaction of such liens.Petitioners then approached John Quick for reimbursement of the $5,000 but neither he nor his corporation, United Western Builders, Inc., would agree to reimburse them for that amount. Angered by Quick's response, petitioners erected a 12-foot by 9-foot sign alongside their Prescott Country Club residence which stated as follows: THIS HOUSE PURCHASED FROM JOHN R. QUICK PRESIDENT UNITED WESTERN BUILDERS: ALSO BROKER FOR COUNTRY CLUB REALTY Offices at: PRESCOTT VALLEY a Ned Warren Creation PRESCOTT COUNTRY CLUB… WE ARE SUING QUICK FOR: A. FRAUD B. MISREPRESENTATION C. STATE CANCELLATION OF ALL REAL ESTATE LICENSES Our Opinion: DEAL WITH THIS MAN & HIS ASSOCIATES AT ARMS LENGTH & AT YOUR OWN PERIL MORE DETAILS? INQUIRE WITHIN The sign was erected during October 1975. Subsequently, on or about October *735 28 of the same year, Douglas McIntyre and his wife, Gail McIntyre, filed suit against petitioners. In their complaint, the McIntyres alleged that the sign libeled Douglas McIntyre because he was the owner and broker of Country Club Realty and had nothing whatsoever to do with petitioners' purchase of their home from United Western Builders, Inc. and Quick. For such alleged libel, the McIntyres sought to recover compensatory damages and $150,000 in punitive damages. [1]
Petitioners were forced to obtain legal counsel to defend themselves and incurred legal fees in the amount of $9,812 for the taxable year 1976. [2] On their 1976 return, petitioners claimed a deduction for this amount which was broken down as follows: Legal costs
$ 607
Legal fees
Brown & Boyle
1,324
Wolfinger & Lutey
200
Goldstein, Mason &
Ramras
7,500
Mileage
181
Total
$9,812
*736 In his notice of deficiency, respondent disallowed this deduction in its entirety. The sole issue for decision is whether petitioners are entitled to deduct all, or any portion, of the legal expenses claimed by them on their 1976 tax return. In order for the legal expenses in this case to be deductible, they must come within the purview of either section 162(a) or 212(2) of the Internal Revenue Code of 1954. However, since petitioners concede, appropriately, that section 162(a) is inapplicable to their case, we need concern ourselves only with section 212(2). Section 212(2) allows a deduction for all ordinary and necessary expenses paid or incurred during the taxable year for the "management, conservation, or maintenance of property held for the production of income." Petitioners contend that their legal expenses were properly deductible under this section since they were incurred for the conservation of property held for the production of income. Respondent, however, contends that the expenditures were personal in nature and therefore nondeductible under section 262. Whether the legal expenses incurred by petitioners in defending the libel suit are properly deductible *737 under section 212(2) depends on whether the suit arose in connection with petitioners' profit seeking activities. It does not depend on the consequences that might result to their income producing property from a failure to defeat or settle the suit. It is now well established that the origin and character of the suit with respect to which an expense was incurred rather than its potential effect upon the financial fortunes of the taxpayer constitute the controlling test in determining whether an expense is deductible under section 212. United States v. Gilmore,372 U.S. 39 (1963); United States v. Patrick,372 U.S. 53 (1963). In the instant case the legal expenses which were incurred by petitioners in defending the libel suit did not arise in connection with any profit seeking activities. On the contrary, the origin of the libel suit instituted against petitioners is traceable to a dispute between petitioners and John Quick with respect to the purchase of the petitioners' personal residence. It was because of this dispute that petitioners erected the controversial sign that ultimately led to the libel action. Consequently, we hold that the legal *738 expenses at issue are not properly deductible under section 212(2) since they originated in a wholly personal context. The fact that the house was purchased in the name of Robb Properties does not change this result. Robb Properties was simply a family trust created by petitioners to maintain, conserve, and expand the Robbs' assets. Even if the trust had been engaged in a trade or business, this fact would not alter the personal nature of the expenses incurred by petitioners. The house was purchased as petitioners' personal residence and not in connection with any profit seeking activities. Therefore, the mere fact that Robb Properties actually held title to the house in question does not change our result. Decision will be entered for the respondent.
Footnotes
1. John Quick also filed a libel suit against petitioners for the amount of $150,000. However, such suit was withdrawn prior to the time of trial.↩
2. The trial was held from June 5 to June 12, 1979. The jury returned a verdict for the plaintiffs and awarded them $2,000 in compensatory damages, $5,000 in punitive damages, and costs in the amount of $903.80.↩