T.C. Summary Opinion 2003-99

UNITED STATES TAX COURT

BARNEY K. HUANG AND LINDY W. HUANG, Petitioners <u>v</u>.
COMMISSIONER OF INTERNAL REVENUE, Respondent

Docket No. 8664-02S.                    Filed July 23, 2003.

Barney K. Huang and Lindy W. Huang, pro se.

<u>Jeanne Gramling</u>, for respondent.

DINAN, <u>Special Trial Judge</u>:  This case was heard pursuant to
the provisions of section 7463 of the Internal Revenue Code in
effect at the time the petition was filed.  The decision to be
entered is not reviewable by any other court, and this opinion
should not be cited as authority.  Unless otherwise indicated,
subsequent section references are to the Internal Revenue Code in

effect for the years in issue, and all Rule references are to the Tax Court Rules of Practice and Procedure.

Respondent determined deficiencies in petitioners' Federal income taxes of $5,132, $3,941, and $2,878 for the taxable years 1995, 1996, and 1997, respectively.

The issues for decision are: (1) Whether petitioners are entitled to offset capital gain income with a capital loss carryover in each of the years in issue; (2) whether petitioners are entitled to a deduction for mortgage interest in an amount greater than that determined by respondent for 1996; (3) whether petitioners are entitled to miscellaneous itemized deductions in amounts greater than those determined by respondent, namely (a) for investment expense of $29,103 in 1995, and (b) for certain legal expenses in each of the years in issue; (4) whether and to what extent petitioners received unreported pension or annuity income in 1996; and (5) whether petitioners are entitled to deduct an IRA contribution for petitioner wife in 1996. All remaining adjustments in the notice of deficiency are in petitioners' favor, have been conceded by petitioners, or are computational and will be resolved by the Court's holding on the issues.[1]

---

[1]In their petition, petitioners state that they made a payment of $831 for 1997 which was "ignored" by the Internal Revenue Service. However, the record shows that this payment was in fact credited to an assessment of the same amount, an

(continued...)

Some of the facts have been stipulated and are so found. The stipulations of fact and those attached exhibits which were admitted into evidence are incorporated herein by this reference. Petitioners resided in Raleigh, North Carolina, on the date the petition was filed in this case.

Generally, a taxpayer bears the burden of proving the Commissioner's determinations in a statutory notice of deficiency to be in error. Rule 142(a). Although section 7491(a) shifts the burden of proof to the Commissioner with respect to certain factual issues, the burden remains on the taxpayer with respect to an issue where the taxpayer (1) fails to introduce credible evidence with respect thereto, or (2) fails to comply with statutory recordkeeping and substantiation requirements.

A taxpayer must keep records sufficient to establish the amounts of the items reported on his Federal income tax return. Sec. 6001; sec. 1.6001-1(a), (e), Income Tax Regs. In the event that a taxpayer establishes that a deductible expense has been paid but is unable to substantiate the precise amount, we generally may estimate the amount of the deductible expense bearing heavily against the taxpayer whose inexactitude in

---

[1](...continued)
assessment of taxes and interest which apparently had been made by respondent under the authority of sec. 6213(b)(1). The amount of this assessment (exclusive of the interest portion) is properly reflected in the notice of deficiency in such a manner as to reduce the amount of the 1997 deficiency.

substantiating the amount of the expense is of his own making. Cohan v. Commissioner, 39 F.2d 540, 543-544 (2d Cir. 1930). We cannot estimate a deductible expense, however, unless the taxpayer presents evidence sufficient to provide some basis upon which an estimate may be made. Vanicek v. Commissioner, 85 T.C. 731, 743 (1985).

Capital Loss Carryovers

In each of the years in issue, petitioners did not include in income any capital gains or report any capital losses.[2] In the notice of deficiency, respondent determined that petitioners must include in income capital gains of $4,122 in 1995, $5,219 in 1996, and $3,853 in 1997. Petitioners concede that they realized capital gains in these amounts. Petitioners, however, argue that they are entitled to offset these gains with capital loss carryovers.

A capital loss is a loss from the sale or exchange of a capital asset. Sec. 1222. A capital asset is property held by a taxpayer of a type other than the eight categories of property

---

[2]There were no capital gains or capital losses reflected on the faces of the returns filed by petitioners in each of the years in issue. For the 1997 return, there was a Schedule D, Capital Gains and Losses, attached to the return which showed a capital gain for the year. Respondent suggests that this schedule may have been submitted at the request of the IRS after the rest of the return had been filed. In any event, the amount of the gain--which is substantially less than that determined in the notice of deficiency and which does not reflect any capital loss carryover--was not included in the computation of petitioners' 1997 gross income.

enumerated in section 1221(a).  One such category includes depreciable property and real property used in the taxpayer's trade or business.  Sec. 1221(a)(2).

In general, a taxpayer's capital losses are allowed only to the extent of the taxpayer's capital gains, plus $3,000, in any given taxable year.  Sec. 1211(b).  However, where a taxpayer's losses are not allowed in a given taxable year due to insufficient capital gains, the losses generally may be carried over from year to year until the entire amount of the losses is allowed.  Sec. 1212(b).

Petitioners argue that they are entitled to capital loss carryovers with respect to losses they sustained in connection with a partnership known as Tara of North Hills (Tara).  Over the years, petitioners had invested a large amount of money in this partnership, which owned an apartment complex.  Petitioners were also involved in the management of the complex.  Tara entered into bankruptcy proceedings in the late 1980s.

It is unclear whether petitioners ever recognized a loss from the sale or exchange of a capital asset in connection with Tara.  See secs. 1221 and 1222.  While petitioners introduced into evidence numerous documents purporting to show their investment in the partnership and the result of the bankruptcy proceedings, petitioners have failed to substantiate the amount of any loss sustained with respect thereto, and whether any such

loss carried over into the years in issue, surviving petitioners' own personal bankruptcy. The documents that petitioners have submitted to the Court as evidence of their entitlement to carryovers are haphazard at best, and no apparent attempt was made to calculate for the Court the actual amount of the capital loss carryovers, other than to state that the losses offset the gains in full in the years in issue. Finally, petitioners' argument with respect to this issue is suspect because petitioners failed to report any of the alleged capital losses on their returns in the years in issue.

We hold that petitioners have not substantiated the existence of a capital loss carryover that would offset the capital gain income determined by respondent in any of the years in issue. Sec. 6001; sec. 1.6001-1(a), (e), Income Tax Regs.

## Mortgage Interest Expense

Petitioners claimed an itemized deduction for mortgage interest expense of $8,732 in 1996. Respondent decreased this deduction, allowing a deduction of only $3,732.

Mortgage interest expense generally is deductible by individual taxpayers, subject to various limitations not relevant here. Sec. 163(a), (h).

Petitioners have not substantiated that they paid mortgage interest expense of any amount in 1996. We therefore sustain

respondent's determination on this issue.  Sec. 6001; sec.
1.6001-1(a), (e), Income Tax Regs.

Miscellaneous Itemized Deductions

Petitioners claimed miscellaneous itemized deductions for
the following expenses in the respective taxable years:

|  | 1995 | 1996 | 1997 |
|---|---|---|---|
| Unreimbursed employee expenses | $4,331 | $5,035 | $7,087 |
| Legal expenses | 3,738 | 16,274 | 34,026 |
| Investment | 29,103 | -- | -- |
| Other | 860 | -- | -- |
|  | 38,032 | 21,309 | 41,113 |

Respondent decreased petitioners' deductions in 1995 and 1996 and
increased their deduction in 1997, allowing deductions for
expenses totaling $10,319 in 1995, $17,940 in 1996, and $42,013
in 1997.

In 1988, petitioner husband (Mr. Huang) was charged with
attempted second degree rape and assault on a female, Grace Wang.
Petitioners were close friends with the Wang family.  Mr. Huang
had known Ms. Wang's father from 30 years earlier; he had known
Ms. Wang since she was about 5 years old, and Ms. Wang was
married to one of Mr. Huang's coworkers at North Carolina State
University (NCSU).  The alleged rape and assault occurred on a
day when Ms. Wang had brought her child to petitioners' home so
that her child could play with petitioners' child.

After a jury trial, Mr. Huang was acquitted of the rape
charge but convicted on the assault charge.  The conviction
subsequently was reversed by an appellate court, which found that

the trial court had made an error in the admission of certain evidence. After the reversal, the State of North Carolina dismissed the charge against Mr. Huang due to the age of the case and the potential impact of a retrial on the alleged victim. These events led to petitioners' involvement in a number of additional legal matters, including a malicious prosecution suit against Ms. Wang. In the malicious prosecution suit, in order to overcome a presumption of probable cause for initiation of the prosecution which arose from the jury's finding of guilt on the assault charge, Mr. Huang alleged that "members of the faculty and administration of N.C. State University * * * paid Wang to falsely accuse Huang of sexually assaulting her" as part of a conspiracy to deprive Mr. Huang of his employment at NCSU. Mr. Huang did not prevail in this suit, in part due to the State court's finding that Mr. Huang was unable to produce any evidence of such a payment or conspiracy.

NCSU eventually terminated Mr. Huang's employment, stating that the basis for his dismissal was, in part, the alleged attack on Ms. Wang. In response to the termination of Mr. Huang's employment, petitioners filed further lawsuits on various grounds.

During the years in issue, petitioners hired an attorney, Kirk Osborn, who represented them in various matters, primarily related to the criminal and malicious prosecution matters.

Petitioners also paid another attorney, Janet Brown, and two reporting services, Bryant Court Reporting Services, Inc., and Associated Reporting & Transcription, for services rendered in connection with the malicious prosecution suit.

Prior to the years in issue, petitioners were involved in various bankruptcy proceedings, both in their individual capacities and with respect to their status as partners in Tara, the investment discussed above. Prior to and during 1995, petitioners employed an attorney, Robert Willis, to bring a malpractice suit against a law firm which had represented petitioners with respect to their investment in Tara, the bankruptcy of Tara, and petitioners' own personal bankruptcy. In 1995 and 1996, petitioners hired another attorney, Brian Upchurch, to bring another legal malpractice suit, this time against Robert Willis.

Investment Expense

While a deduction generally is allowed for interest expense, an individual's deduction of investment interest is subject to certain limitations, and it generally may not exceed the individual's "net investment income" for the taxable year. Sec. 163(a), (d)(1); see also sec. 163(h) (disallowing any deduction for "personal interest").

Petitioners argue that the $29,103 "investment" expense listed on their 1995 return arose as follows: Prior to being

placed in bankruptcy in 1990, petitioners had filed various lawsuits in connection with Mr. Huang's former employment with NCSU. During the bankruptcy proceedings, the trustee auctioned petitioners' causes of action in these matters as assets of the bankruptcy estate. Petitioners, who outbid NCSU and paid the bankruptcy estate $102,000, reacquired their rights to sue NCSU in 1991. Petitioners were lent the $102,000 by Mr. Huang's sister in Taiwan, and the $29,103 investment expense on their 1995 return represents an interest payment on this loan which petitioners paid in cash.

We need not address the merits of petitioners' contention that interest payments on the alleged $102,000 loan would be deductible as investment interest expense. Although it is clear that $102,000 was paid to the bankruptcy estate, petitioners have failed to adequately substantiate the existence of a bona fide loan, they have failed to substantiate that they were required to pay interest thereon, and they have failed to substantiate that they in fact made any interest payment during 1995. Petitioners therefore are not entitled to the claimed investment expense. Sec. 6001; sec. 1.6001-1(a), (e), Income Tax Regs.

### Legal Expenses

Taxpayers generally may deduct expenses which are ordinary and necessary in carrying on the trade or business of being an employee. Sec. 162(a). Taxpayers also generally may deduct

expenses which are ordinary and necessary for (1) the production or collection of income, or (2) the management, conservation, or maintenance of property held for the production of income. Sec. 212(1) and (2). Personal, living, and family expenses, on the other hand, generally may not be deducted to any extent. Sec. 262(a).

Whether a legal expense is deductible under section 162(a) or section 212, or nondeductible under section 262(a), is contingent upon the origin and character of the underlying claim, not on its potential consequences upon the fortunes of the taxpayer. United States v. Gilmore, 372 U.S. 39 (1963); Peters, Gamm, West & Vincent, Inc. v. Commissioner, T.C. Memo. 1996-186; Lussy v. Commissioner, T.C. Memo. 1995-393, affd. without published opinion 114 F.3d 1201 (11th Cir. 1997). This Court has stated:

> Quite plainly, the "origin-of-the-claim" rule does not contemplate a mechanical search for the first in the chain of events which led to the litigation but, rather, requires an examination of all the facts. The inquiry is directed to the ascertainment of the "kind of transaction" out of which the litigation arose. Consideration must be given to the issues involved, the nature and objectives of the litigation, the defenses asserted, the purpose for which the claimed deductions were expended, the background of the litigation, and all the facts pertaining to the controversy. [Citations and fn. ref. omitted].

Boagni v. Commissioner, 59 T.C. 708, 713 (1973).

Numerous documents related to petitioners' legal expenses were introduced into evidence in this case. The bulk of these

documents show that petitioners were involved in various investments, lawsuits, bankruptcies, and other legal matters, but they do nothing to substantiate specific deductible expenses. The documents which do show specific expenditures are with respect to the attorneys and the court reporting services noted above.

Petitioners first argue that they are entitled to deduct additional expenses paid to Mark Kirby and Brian Upchurch in 1995, and to Matthew Martin in 1996. We hold that petitioners are not entitled to these deductions because they have failed to substantiate the payment of these expenses during the relevant years. Sec. 6001; sec. 1.6001-1(a), (e), Income Tax Regs.

Petitioners next argue that they are entitled to deduct additional expenses paid to the two court reporting services, Janet Brown, and Brian Upchurch in 1996, and to Kirk Osborn in 1996 and 1997. A portion of these expenses was incurred in connection with the secondary malpractice suit brought by petitioners. The suit underlying the original malpractice claim by petitioners dealt with several issues, including petitioners' personal bankruptcy and their investment in Tara. Because the connection between petitioners' investment in Tara and the secondary malpractice suit years after Tara's existence is too attenuated to ascertain; we are unable to estimate the portion of these expenses which may be deductible versus the portion which

- 13 -

is a nondeductible personal expense under section 262(a).  We therefore find that petitioners have failed to substantiate the amount of deductible expenses, if any, incurred in connection with this malpractice suit.  Sec. 6001; sec. 1.6001-1(a), (e), Income Tax Regs.

The remainder of the expenses were incurred in connection with the malicious prosecution suit.  Petitioners argue that this suit is related to petitioner's former employment with NCSU. They assert that the underlying criminal charges against petitioner were brought as part of an ongoing conspiracy to deprive petitioner of his job.  Petitioners, however, have not offered any credible evidence in support of this assertion.  We have found that petitioners and the Wang family had been personal friends, and that Mr. Huang and Ms. Wang were together on the date of the alleged rape and assault because of this friendship. We accordingly find that the rape and assault charges arose from the personal relationship between Mr. Huang and Ms. Wang, and that the malicious prosecution action is likewise personal in nature.  Thus, these legal expenses are nondeductible personal expenses.  Sec. 262(a); United States v. Gilmore, supra.

Pension and Annuity Income

On their 1996 return, petitioners reported taxable pension and annuity income of $32,397.  Respondent determined that petitioners had additional unreported pension and annuity income

of $5,008.  Petitioners dispute this determination in part, as explained below.

In general, gross income includes all income from whatever source derived, including income from pensions and annuities. Sec. 61(a)(9), (11); sec. 72(a).  However, portions of certain annuity payments, representing a ratable recovery of a taxpayer's investment therein, may be excludable from income.  Sec. 72(b), (d).

Previously taxed contributions to a section 401(a) qualified plan which are returned to the contributing taxpayer before the annuity starting date are not included in income in the year they are returned.  Secs. 72(e)(2)(B)(ii), 402(a).  Interest earned on such contributions, however, is included in gross income unless it is "rolled over" into another eligible retirement plan such as an IRA.  Secs. 72(e)(2)(B)(i), 402(c)(1).

In 1996, petitioners received pension and annuity payments from Aetna Life Insurance Company and from the Teachers' and State Employees' Retirement System of North Carolina (TSERS), which is a section 401(a) qualified plan.  The Forms 1099-R, Distributions From Pensions, Annuities, Retirement or Profit-Sharing Plans, IRAs, Insurance Contracts, etc., attached to petitioners' return listed taxable distributions of $14,716 from Aetna and $19,855 from TSERS.  However, petitioners included in gross income only $32,397, or $2,174 less than the amounts

reflected on the Forms 1099-R. Petitioners concede that this amount is includable in their gross income.

The remainder of respondent's $5,008 adjustment reflects two separate payments which petitioner wife (Ms. Huang) received from TSERS. On January 17, 1996, two checks were issued for Ms. Huang's benefit from TSERS in the total amount of $2,835. Of this amount, $1,913 represented a return of previously taxed contributions which Ms. Huang had made to TSERS, and $922 represented interest on those contributions. The returned contribution amount was paid directly to Ms. Huang; the interest amount was paid to an IRA account for Ms. Huang. Ms. Huang withdrew the contributions because she was not eligible for retirement benefits under the plan.

The contributions Ms. Huang made to TSERS, which were taxed as income as they were earned, are not includable in Ms. Huang's gross income when they were distributed from the qualified plan in 1996. Sec. 72(e)(2)(B)(ii). The remainder of the payment for Ms. Huang was interest on the contributions; this interest is not includable in petitioners' gross income in 1996 because it was paid directly into an IRA account. Sec. 402(c)(1). We accordingly hold that in 1996 petitioners received unreported taxable pension and annuity distributions of $2,174, rather than $5,008 as determined by respondent.

IRA Contribution Deduction

On their 1996 return, petitioners claimed a deduction of $2,000 for an IRA contribution for Ms. Huang.  Respondent disallowed this deduction in full.  Respondent argues that petitioners are not entitled to this deduction because Ms. Huang did not earn any compensation during 1996.  Petitioners argue that the two payments totaling $2,835 paid to Ms. Huang during that year, discussed above, were compensation.

In general, a deduction is allowed to an individual for qualified retirement contributions made by the individual for the taxable year.  Sec. 219(a).  Among other limitations, the amount of the deduction for a taxable year cannot exceed the "compensation includible in the individual's gross income for such taxable year".  Sec. 219(b)(1)(B).  "Compensation" is defined in relevant part as "wages, salaries, professional fees, or other amounts derived from or received for personal service actually rendered".  Sec. 1.219-1(c)(1), Income Tax Regs. Specifically excluded from the definition of "compensation" are interest payments, pension and annuity payments, deferred compensation, and any amounts not includable in gross income. Sec. 219(f)(1); sec. 1.219-1(c)(1), Income Tax Regs.  The maximum deduction for married individuals is computed separately with respect to each individual.  Sec. 219(f)(2).

As discussed above, the two payments totaling $2,835 which Ms. Huang received from TSERS during 1996 are not includable in petitioners' income for that year.  These payments therefore are not "compensation" within the meaning of section 219(b)(1)(B).  Sec. 1.219-1(c)(1), Income Tax Regs.  The only other income reported by petitioners during 1996 was in the form of interest, dividends, pension and annuity payments, and Social Security benefits, none of which are compensation.  Sec. 219 (f)(1).  Consequently, petitioners are not entitled to a deduction for an IRA contribution for Ms. Huang during that year.  Sec. 219(b)(1)(B).

Reviewed and adopted as the report of the Small Tax Case Division.

To reflect the foregoing,

<u>Decision will be entered</u>

<u>under Rule 155</u>.