T.C. Memo. 2001-179

UNITED STATES TAX COURT

JESSE EMMIT AND MARJORIE A. RUPERT, Petitioners <u>v</u>.
COMMISSIONER OF INTERNAL REVENUE, Respondent

Docket No. 11995-99.                    Filed July 19, 2001.

<u>Joseph Onwuteaka</u>, for petitioners.

<u>Elaine H. Warren</u>, for respondent.


MEMORANDUM FINDINGS OF FACT AND OPINION

GERBER, <u>Judge</u>:  Respondent determined a $19,136 deficiency and an accuracy-related penalty under section 6662(a)[1] of $3,629 in petitioners' 1996 Federal income tax.  After agreements of the parties, the issues presented for our consideration are:  (1)

---

[1] All section references are to the Internal Revenue Code in effect for the year in issue, and all Rule references are to the Tax Court Rules of Practice and Procedure, unless otherwise indicated.

Whether petitioners are entitled to deduct certain legal expenses paid in connection with their daughter's domestic relations proceedings; (2) whether petitioners are entitled to claim depreciation deductions with respect to a rental residence and, if so, the amount of depreciation to which they are entitled; and (3) whether petitioners are liable for a section 6662(a) penalty with respect to the legal expense issue.

I.  Legal and Professional Fee Deduction

FINDINGS OF FACT[2]

At all pertinent times, petitioners were married and resided in League City, Texas.  Jesse Emmit Rupert (petitioner) retired from his position as a drilling manager for Atlantic Richfield Indonesia, Inc. (Atlantic Richfield), on February 1, 1987.  Since his retirement, petitioner has been involved in investing and did a limited amount of engineering consulting during 1991.

In 1992, petitioners' daughter Michelle Ann Steele (Michelle) became involved in a divorce proceeding against her then husband, Tad Edward Wilkinson (Tad).  When the proceeding was instituted, Michelle and Tad had a daughter, Ashley, who was about 2 years old.  During the period 1992 through 1995,

---

[2] Because of the discrete nature of the facts and legal discussion for each issue, the findings of fact and legal discussion for each issue are separately set forth.  The fact finding is being segregated for convenience only, and all findings are applicable throughout the opinion.  The parties' stipulation of facts is incorporated by this reference.

petitioner studied domestic relations law because he thought that Michelle was being "cheated", and he encouraged her to discharge her attorney. In 1995 a divorce was granted, and Michelle received primary custody of Ashley. Thereafter, by means of a legal proceeding, Tad sought primary custody of Ashley. In order to defend against Tad's action, petitioner withdrew $30,000 from his retirement account to pay part of the legal and professional fees.

On April 20, 1996, petitioner and his daughter, Michelle, entered into a written agreement under which petitioner agreed to pay legal, medical, and other expenses incurred in connection with Michelle's claims against Tad in exchange for which Michelle agreed to pay petitioner 30 percent of any residual recovery received from Tad. The residual was payable only after payment of Michelle's and petitioner's expenses. At that time Michelle was indigent and without representation. On April 26, 1996, after consultation with Attorney Daniel Murphy, petitioners, through Attorney Murphy, intervened in the custody litigation between Michelle and Tad. By intervening, petitioners sought custody of their granddaughter Ashley. During October 1996, Attorney Murphy also began representing Michelle in the custody proceeding. During 1996 petitioner incurred $39,274 for legal expenses including $26,691 in professional fees, $8,550 for travel, and $4,033 in office expenses.

During October 1996, custody of Ashley was granted to Tad, who was living in Saudi Arabia. Petitioner's only recovery under the agreement with Michelle was $1,920 recovered in 1999. As of the time of trial in this tax case, the divorce proceeding was still pending and, by its terms, the written agreement between petitioner and Michelle had terminated. Petitioners claimed the $39,274 as "Legal and professional services" on a Schedule C, Profit or Loss From Business, for "Rupert's Engineers", the principal business activity of which was shown as "consulting". No income from consulting was reported for 1996 and none had been reported since 1991, when $7,710 was reported. Petitioners' source of income since 1991 has been Social Security payments, retirement accounts, and investments. Since execution of the agreement with Michelle, petitioner has devoted more than half of his time to Michelle's domestic relations problems.

OPINION

Ordinary and necessary expenses paid or incurred in carrying on a trade or business are deductible under section 162. Conversely, personal, living, or family expenses are not allowable. Sec. 262. The origin and character of the claim in litigation is determinative of whether litigation expenses are personal or deductible. United States v. Gilmore, 372 U.S. 39 (1963). In particular we look to whether the claim arose in connection with a profit-seeking activity. Id. at 48.

Petitioners claimed $39,274 of legal, professional, and related expenses in connection with their daughter's divorce and custody litigation.  We note that some portion of the claimed expenses related to petitioners' attempt to gain custody of their grandchild.  Petitioner argues that he was engaged in a full-time consulting business during the years under consideration and that his involvement in Michelle's divorce and custody proceedings was part of that endeavor.  Respondent has countered that, as a preliminary matter, petitioner's consulting activity did not rise to the level of being a trade or business.  Even if petitioner's consulting activity was a trade or business, respondent argues that the expenses paid in connection with Michelle's domestic relations litigation are not directly connected with or proximately related to petitioner's consulting activity.  Finally, respondent argues that the origin and very nature of petitioners' involvement in their daughter's domestic relations activity are personal.  We agree with respondent that the expenses in question are not deductible.[3]

Petitioner retired from his position as a drilling manager for Atlantic Richfield during 1987 and after that time was paid on one occasion during 1991 for consulting in connection with his

---

[3] We need not decide whether sec. 7491(a) affects the placement of the burden of proof here, because we resolve the issues on the basis of a preponderance of the evidence in the record.

preretirement expertise. Other than the $7,710 consulting fee earned during 1991, petitioner had no active income-producing consulting engagements. See Commissioner v. Groetzinger, 480 U.S. 23 (1987).

Even if we were to find that petitioner's consulting activity reached the level of being a trade or business or other profit-seeking activity, we are unconvinced that petitioners' involvement in their daughter's domestic relations difficulties was an integral part of petitioner's consulting activity. Although petitioner studied domestic relations law and related matters, he is not a lawyer and not entitled to represent the interests of another. In that regard, there was no potential for profit from "investing" in a divorce or child custody proceeding. Petitioners' assistance to their daughter is commendable, but it is in origin and character a personal matter.

Petitioner spent a great deal of effort in researching domestic relations law and assisting his daughter, but that alone does not make his activity one that is profit seeking. We also note that petitioner entered into an agreement with his daughter. Under that agreement, petitioner would be reimbursed for his expenditures pro rata, using the ratio of his expenditures to his daughter's. Once their expenditures were reimbursed, then petitioner was to receive 30 percent and his daughter 70 percent of any recovery that exceeded the cost of the domestic relations

proceedings.  Although petitioner personally calculated potential for recovery, he did not possess the background and expertise to lend credibility to such projections.  There has been no showing that there was any potential for a recovery that exceeded the expenditures on behalf of the litigant; i.e., that Michelle would be entitled to alimony and or some form of damages that exceeded the amount of expenditures that Michelle and petitioner incurred in the proceedings.  Even though there was a written agreement, in substance, petitioner was merely being a good parent and assisting his daughter in her time of need.  In addition, petitioners were personally seeking custody of their granddaughter.  On this record, we are unable to elevate this arrangement to a profit-seeking activity.

Accordingly, we hold that petitioners are not entitled to deduct the $39,274 expended in connection with their daughter's domestic relations litigation.

II.  Depreciation

FINDINGS OF FACT

On July 11, 1982, petitioner purchased a 1982 model, 28-foot mobile home for $36,000, and it was placed on a long-term leased lot on Lake Cherokee in Henderson County, Texas.  Petitioners permanently affixed the home to the realty by removing the wheels and axles, placing it on foundation blocks, and securing it with steel straps attached to ground anchors.  Petitioners added

certain other improvements in and around the home, including a 12- by 24-foot deck, a concrete perimeter, a storage area, electrical wiring, a water system, a boathouse, a deck, and an electric lift.  The cost of the improvements was $3,000.

Because petitioners were stationed overseas until 1986, they used the home only occasionally for vacations during their infrequent visits to the United States.  Petitioner had a heart attack during 1986, and there was no further vacation use after 1985.  When petitioner retired, petitioners purchased a residence in League City, Texas.  On their 1991 through 1996 tax returns, petitioners reported the home as a rental property and reflected income and deductions on Schedules E, Supplemental Income and Loss.  For each year depreciation approximating $3,900[4] was claimed on the Schedule E in connection with the home.  Gross rents were reflected for 1991, 1993, and 1994 in the amounts of $1,782, $4,200, and $350, respectively, and no rents were reported for the years 1995 through 1998.  The property was first rented in 1991 when its value was $39,000.

## OPINION

Respondent determined that petitioners were not entitled to $3,900 of depreciation on the home for 1996.  Petitioners' Schedule E for 1996 reflected a $7,305 loss from rental of the

---

[4] For reasons which are not explained in the record, petitioners claimed $3,900 in some years and $3,910 in others. For the 1996 tax year, however, petitioners claimed $3,900.

home.  That loss comprised the $3,900 claim for depreciation and $3,405 of other expenses, including utilities, land rent, etc. In his answer to the petition, respondent alleged "that, if the mobile home is held for the production of income, the property should be depreciated as 27.5-year class residential real property under MACRS [modified accelerated cost recovery system] rather than as 10-year property under ACRS [accelerated cost recovery system]."

The parties stipulated that the acquisition cost of the rental home was $36,000.  At trial, petitioner's uncontroverted and believable testimony reflected that significant improvements were made to the home, including the removal of wheels and axles, placing it on foundation blocks, securing it with steel straps attached to ground anchors, adding a 12- by 24-foot deck, a concrete perimeter, a storage area, electrical wiring, a water system, a boathouse, a deck, and an electric lift.  In addition, petitioner's uncontroverted testimony was that the improvements cost $3,100.[5]  Petitioner, as owner of the property, testified that the value of the home and the improvements was at least $39,100 in 1991, the first year it was rented.  See sec. 1.167(g)-1, Income Tax Regs.  Petitioner testified that no

---

[5] Although petitioner testified that the cost of the improvements was $3,100, for 1996 the depreciation claimed was $3,900, which would indicate $3,000 rather than $3,100 of improvements.  See also supra note 4.

depreciation was claimed or allowable before 1991. No evidence contradicted petitioner's testimony. Accordingly, there is sufficient and credible evidence in the record to establish that petitioners' basis in the rental home was $39,000 as of 1991.

We find that the property was held for the production of income during 1996 and that it was placed in service in 1991. Our findings are supported by petitioner's uncontroverted testimony reflecting his intent to rent or sell the property during 1996 and by the fact that it was rented during prior years. Respondent argues that the rentals and income reported from the property were received from a person related to petitioners. That fact, standing alone, does not show that the rental activity was not bona fide or that no profit was intended. There has been no evidence of petitioners' personal use after 1985. There has been no showing that the rentals were not at arm's length or that the amounts received were not based on fair rental rates.

Finally, respondent argues that petitioners must use a 27.5-year life in accord with MACRS. Respondent admits that manufactured homes were treated under ACRS as having a 10-year life. Sec. 168(h)(3) (before the Tax Reform Act of 1986 (TRA), Pub. L. 99-514, 110 Stat. 2085). However, TRA sections 201, 203, and 211, 100 Stat. 2122-2123, 2143, established a 27.5-year life under MACRS for this type of property if it was placed in service

after December 31, 1986. See <u>Hosp. Corp. of Am. v. Commissioner</u>, 109 T.C. 21, 42 (1997). Accordingly, the key here is the date when the property was placed in service. If it had been placed in service before 1987, then petitioners would have been able to elect the 10-year life.[6] The property was rented during 1991, 1992, and 1993. In that regard, petitioner testified that the property was placed in service in 1991, the first year it was rented. On the basis of record, we find that the property was placed in service in 1991, the first year that it was rented. Accordingly, the 10-year life cannot apply, and the depreciation must be based on a 27.5-year life. We leave the parties to compute the amount of depreciation allowable for the 1996 tax year.

III. <u>Accuracy-Related Penalty</u>

OPINION[7]

Respondent determined that petitioners were liable for an accuracy-related penalty under section 6662 with respect to the portion of the deficiency that is caused by any underpayment related to the $39,274 legal and professional fee deduction and

---

[6] We note that the returns available in our record date back only as far as 1991. If petitioners had placed the property in service before 1987 using a 10-year life, there would have been no basis left to depreciate as of the 1996 tax year.

[7] No specific finding is set forth here because the findings of fact set forth with respect to the legal and professional fees will suffice.

the omission of the $30,000 withdrawal from petitioner's retirement account. Respondent did not apply the accuracy-related penalty to the $3,900 depreciation adjustment. Respondent, in his answer, conceded that petitioners are not liable for the accuracy-related penalty with respect to the omission from income of the $30,000 withdrawal from petitioner's retirement account.

Section 6662(a) imposes a 20-percent accuracy-related penalty if any portion of an underpayment is attributable to negligence or disregard of rules or regulations or any substantial understatement of tax. Negligence is a lack of due care or failure to do what reasonable and prudent persons would do under the circumstances. Marcello v. Commissioner, 380 F.2d 499, 506 (5th Cir. 1967), affg. in part and remanding in part on another issue 43 T.C. 168 (1964).

No penalty is imposed if it is shown that the taxpayer had reasonable cause and acted in good faith. Sec. 6664(c). A taxpayer may be considered to have good faith or to be reasonable if he relied on his accountant or attorney and that reliance was reasonable. See United States v. Boyle, 469 U.S. 241, 251 (1985). Petitioners contend that they relied on attorneys with respect to their pursuit of their daughter's domestic relations litigation, but there is no showing that petitioners relied on professionals for their reporting position where they claimed the

$39,274 as expenses incurred in petitioner's consulting business. We note that petitioner prepared his own 1996 Federal income tax return.

Under section 7491(c), respondent must carry the "burden of production" with respect to the question of whether petitioners are liable for penalties, including the accuracy-related penalty. See Higbee v. Commissioner, 116 T.C. ___, ___, (2001) (slip op. at 14). We have concluded that the burden of production required of the Commissioner is that he "must come forward with sufficient evidence indicating that it is appropriate to impose" the accuracy-related penalty. Id. at ___ (slip op. at 15).

There is sufficient evidence in this record to support our holding that respondent has met the above-described burden. Petitioners' very act of veiling their claim of expenses for their daughter's domestic relations litigation as part of an engineering consulting business shows that they acted negligently and not with good faith. Petitioners' reporting position gave the false impression that the $39,274 was being claimed in a Schedule C activity that was connected with "Engineering". In addition, petitioners' attempt to claim what are clearly personal expenditures as a business item supports the imposition of the penalty. Under these circumstances, we find petitioners liable for the accuracy-related penalty of section 6662(a) with respect to the portion of the underpayment attributable to their claim of

the $39,274 of legal and professional fees.

To reflect the foregoing and the agreement of the parties,

<u>Decision will be entered</u>

<u>under Rule 155.</u>